IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CLANE GESSEL<br><br>        *Plaintiff,*<br><br>   v.<br><br>JOHN DOES I & II, individuals whose true names are unknown<br><br>        *Defendant.* | Civil Action No. 1:24-cv-000275<br><br>JURY TRIAL DEMANDED |

## **VERIFIED COMPLAINT**

Plaintiff Clane Gessel ("Mr. Gessel" or "Plaintiff"), by and through his undersigned counsel, hereby brings this Verified Complaint and Demand for a Jury Trial against Defendant John Doe I and Defendant John Doe II (collectively "Defendants"), and in support thereof alleges as follows:

## **NATURE OF THE ACTION**

1. Mr. Gessel brings this lawsuit to restore his reputation and recover for the damage an anonymous person or persons has inflicted through their submission of false and defamatory statements to a business associate of Mr. Gessel.

2. Mr. Gessel is an accomplished fine wedding photographer and has been featured in numerous publications, including *National Geographic*, *The New York Times*, and *Vogue*. He is well established in the industry and has photographed events all over the world.

1

3. Mr. Gessel often sponsors and provides free services for industry events. Mr. Gessel was booked to sponsor such an event, hosted by Emerge Event Collective on December 10, 2023, in Boca Raton, Florida.

4. On or about November 16, 2023, or about one month prior to the Emerge Event Collective, the event coordinator, Sarah Roshan, received a collection of messages from another person or persons, accusing Mr. Gessel of plagiarizing photographs and the sexual harassment of a former employee. Both of these accusations are false.

5. Because of these messages, Ms. Roshan cancelled Mr. Gessel's sponsorship and appearance at the December 10, 2023 event.

6. Ms. Roshan would not identify explicitly who was sending her the messages, only that "two people" gave her this information.

7. The information submitted to Ms. Roshan contained false and damaging statements that are tortiously actionable libel *per se* under the laws of the State of Colorado.

8. Mr. Gessel has been harmed in reputation, held up to public ridicule, and otherwise damaged by the tortious conduct of at least two actors whose identities are unknown to him.

## **PARTIES**

9. Plaintiff Clane Gessel ("Mr. Gessel") is an individual domiciled in the State of Washington.

10. Defendants John Doe I and II are individuals who published false, defamatory, and injurious statements about Mr. Gessel to a third-party via the website Instagram.

11. Defendants are believed to be individuals living, working, or operating in different states across the United States.

12. Upon information and belief, Defendants are both members of the group Emerge Event Collective ("EEC") which is a national organization with members from all over the United States.

13. Upon information and belief, one or both of the Defendants planned on, and in fact did, attend an event in Boca Raton, Florida pursuant to their membership with EEC. EEC hosts events in different cities across the country to host networking events in specific geographical areas.

14. Given Defendants are members of EEC and that one or both attended a local networking event in Florida, Defendants are believed to be domiciled in different states along the Southeast and East Coast.

## JURISDICTION AND VENUE

15. Upon information and belief, the false statements published by the Defendants were read by Sarah Roshan, who is domiciled in the State of Colorado, and where Emerge Event Collective is based.

16. Defendants sent the defamatory messages to Ms. Roshan and her business EEC, thus the intentional tortious act was committed in the State of Colorado.

3

17. By reaching out to Ms. Roshan and EEC for the purpose of disseminating defamatory content in Colorado, Defendants have sufficient minimal contacts with the State of Colorado.

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Mr. Gessel and the Defendants; and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

19. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in and through Denver, Colorado, within this Court's judicial district.

## FACTS

20. Plaintiff Clane Gessel began his career in photography 20 years ago. His work was initially featured in *Smithsonian*, *National Geographic*, and *The New York Times*, and from this exposure he was commissioned to shoot weddings.

21. Since 2003, Mr. Gessel has photographed over 500 weddings, in more than 50 countries, with a client list that includes billionaires, royalty, and celebrities.

22. Mr. Gessel has also been featured for his nature photography, shooting the cover of National Geographic's hard copy book "Spectacle."

23. His images have been featured in several publications including *The New York Times*, *Forbes*, *Fortune*, *Vogue*, *Brides*, and is sold in National Geographic Fine Art Galleries nationwide.

24. Emerge Event Collective ("EEC") was founded in 2012 by Sarah Roshan and is described as an interactive event collective and networking group for luxury wedding and event professionals. EEC also maintains a directory of wedding and event professionals, including venues, planners, photographers, and caterers that users can search when looking for vendors to hire for their own event.

25. As part of its mission, EEC hosts events for the purpose of networking. EEC planned such an event called "serata di luce" or "an evening of light" to be held on December 10, 2023. For tickets ranging from $85 to $330 members and non-members could purchase tickets to attend this event organized by EEC that entailed an axe throwing outing, dinner, and a party networking event.

26. For this event, several wedding professionals served as sponsors, providing their services in exchange for publicity to fellow industry professionals and potential clients. For example, the DJ, linen, décor, florals, weather consulting, and videography were all provided by sponsors and were listed on the online ticket page, along with each business' social media handle.

27. Mr. Gessel was contracted as a sponsor for this event to provide photography, and had planned to travel to Boca Rotan, Florida to provide his services.

28. In exchange for his photography services, Mr. Gessel was allowed free entry to the event, free meals, advertisement on the ticketing page that noted Mr. Gessel as the exclusive photographer for the site, and his photographs to be disseminated to attendees after the event. This exchange also included the exposure and introduction to all of the luxury wedding vendors who were attending the event,

5

which was the primary consideration which induced Mr. Gessel to agree to the sponsorship.

29. Pursuant to his contract, Mr. Gessel signed a vendor policy agreement with the venue of the event, Waterstone Resort and Marina, in addition to providing proof of required liability insurance to the venue.

30. Mr. Gessel had entered into a valid and enforceable contract with EEC to photograph their event.

31. On or about November 16, 2023, Sarah Roshan, the founder and organizer of EEC, contacted Mr. Gessel via a phone call. In this phone call, Ms. Roshan told Mr. Gessel that two individuals—Defendants John Doe I and II—had reached out to her regarding his sponsorship of the December 10, 2023, EEC event, to express their objection to his sponsorship and informing her that Mr. Gessel stole photos from another artist and that Mr. Gessel sexually harassed a former employee.

32. Both of these accusations are untrue, and Mr. Gessel informed Ms. Roshan of such.

33. After the initial phone call, the conversation continued via private message on the website Instagram. *See* **Exhibit A.**

34. Mr. Gessel forwarded evidence that refutes both of the claims made by Defendants John Doe I and II to Ms. Roshan.

35. Ms. Roshan, in the private Instagram messages, continued to describe what Defendants John Doe I and II published to her, including screen captures of

internet posts from three years ago, including Facebook posts, Reddit threads, and X (formerly Twitter) threads.

36. Regarding John Doe I and II and the effect of their messages, in the private Instagram exchange that occurred on or about November 16, 2023, Ms. Roshan stated:

- "I don't know her, this is just what was sent to me."

- "I don't want some stupid uninformed person to post about canceling us online or canceling anyone involved."

- "The member who reached out to me said she wouldn't post any photos from the event you took out of fear that she would get backlash from her followers."

- "These are things people are sending to me."

- Regarding Defendants John Doe I and II knowing the people involved in the alleged incidents, "I don't think they know these people personally"

- "My fear is that we move forward. [*sic*] Someone posts something stupid and we all get canceled."

- "They don't know you…I am pretty sure. Both people who brought this to me this morning. I think one has met you but doesn't really know you."

- "They've had other people come to them. One said 3 people came to them and another is a sponsor and said one person came to them and said that people are talking about it and they shouldn't align their business with me."

- "I doubt at this point many people have noticed youre [*sic*] sponsoring but I've already heard from two people which is why it's concerning."

- "The two people who gave me this information are heavily involved in promoting the collective as of late."

37. Upon information and belief, as used herein the term "being canceled" or "canceling" an individual is to publicly boycott or shame a person, for an act or belief that is regarded as socially unacceptable. The term is a direct reflection of a person's reputation.

38. Through this conversation Mr. Gessel learned that there were at least two individuals, Does I & II, who provided false information about Mr. Gessel to Ms. Roshan in order to force her to uninvite Mr. Gessel and revoke his sponsorship of the EEC event. Mr. Gessel further learned that Does I and II threatened a backlash if he were to be a sponsor.

39. Upon information and belief, Does I & II knew of Mr. Gessel's sponsorship of the event and specifically targeted Ms. Roshan and EEC for the explicit purpose of interfering with the sponsorship agreement between EEC and Mr. Gessel.

40. Within hours of Mr. Gessel and Ms. Roshan's conversation, Ms. Roshan decided to breach Mr. Gessel's contract sponsorship of the December 10, 2023 EEC event. This decision was a direct result of the messages sent to Ms. Roshan by Defendants John Doe I and II.

41. In her message to Mr. Gessel informing him that he would no longer be allowed to sponsor the event, Ms. Roshan stated, "I think this is a bigger issue than

maybe even you realize and I don't want to risk a PR ["public relations"] nightmare for you or anyone else on our vendor team or our members."

42. Defendants John Doe I and II, either acting independently or in concert, bombarded Ms. Roshan with false and defamatory statements, the direct result of which was the cancellation of his sponsorship and contract of the EEC event.

43. Ms. Roshan's reference to "canceling", "a PR nightmare", and her fear of "backlash" are because of Defendants John Doe I and II's defamatory statements attacking Mr. Gessel's reputation, and by their statements convinced Ms. Roshan that by associating with Mr. Gessel, Ms. Roshan's group, other sponsors, or members will suffer a reputational injury.

44. At the time Defendants John Does I and II published their statements to Ms. Roshan, Defendants knew the statements were false, or, at minimum, Defendants recklessly disregarded whether the statements were true or false.

45. Specifically, Defendants accuse Mr. Gessel of stealing other photographers' work and of sexually harassing other photographers with whom he had worked.

46. The allegations of misconduct are false and Does I and II had no factual basis to make those allegations. Given that they did not know Mr. Gessel personally, John Doe I and II made their statements regarding Mr. Gessel with knowledge of their falsity or at least with reckless disregard as to their truth or falsity.

47. At the time Defendants John Does I and II published their statements to Ms. Roshan, Defendants acted with the intention of causing harm to Mr. Gessel, as

demonstrated by the threat of "backlash" if Ms. Roshan and EEC should associate with him.

48. Upon information, belief, and given Ms. Roshan's identifying statements regarding Defendants and that at least one is a sponsor of the December 10th event, and both are promoting Ms. Roshan's business EEC, Defendants John Doe I and II are also in the wedding vendor industry.

49. Based on the timing and similarity of the statements submitted to Ms. Roshan, the statements were authored and published by separate individuals acting in concert, with the intent to harm Mr. Gessel in his trade and profession.

50. Due to Defendants statements, Mr. Gessel lost the opportunity to attend the EEC event, a value of approximately $1,000 based on the ticket price of $380 per ticket and a promise of three tickets for Mr. Gessel and his staff, the loss of potential clients ranges far beyond.

51. As a luxury wedding photographer, Mr. Gessel's initial fee for an event begins at $29,000 and often rises to over $100,000 per event. The loss of a single potential client could amount to $100,000, which only exponentially expands as more opportunities are lost.

## FIRST CAUSE OF ACTION
### (Defamation and Libel *Per Se*)

52. Plaintiff repeats and reiterates ¶¶ 1 through 51, as if set forth herein.

53. This claim is brought against both Defendants because, as alleged above, they are likely working in concert.

54. This claim arises out of the publication of statements to Ms. Roshan, a Colorado resident, by way of direct messaging to Ms. Roshan.

55. The statements are of and concerning Mr. Gessel as they are reasonably understood to communicate statements and assertion of fact regarding Mr. Gessel.

56. The statements directly referenced Mr. Gessel to Ms. Roshan, given they presumably used both his name and the fact that he was slated to be the photographer at an upcoming EEC event and was referenced as such.

57. The statements asserted false statements of fact and implications about Mr. Gessel.

58. The statements asserted that Mr. Gessel stole photographs from another photographer.

59. The statements also asserted that Mr. Gessel previously sexually harassed an employee.

60. Thus, these statements concerned Mr. Gessel's business, trade or profession and falsely accused him of engaging in serious criminal or professional misconduct.

61. The defamatory meaning of the statements is apparent from the face of the publications.

62. The statements were intended to and did indeed disparage and injuriously affect Mr. Gessel in his trade and profession.

63. Defendants authored and published the statements to Ms. Roshan with knowledge either that the assertions contained therein were false, or with reckless disregard for the truthfulness of the statements.

64. Defendants communicated to Ms. Roshan in bad faith with actual malice.

65. Defendants authored and published the statements without privilege or authorization.

66. Mr. Gessel has suffered reputational harm, loss of revenue, loss of reputational opportunities, mitigation expenses, and other injuries as a direct result of the publication of the statements.

67. As a result of the statements published to Ms. Roshan, Mr. Gessel is entitled to injunctive relief, compensatory damages, presumed damages, pre- and post-judgment interest, costs, and attorneys' fees, all in an amount to be proven at trial but no less than $1,000,000 exclusive of fees, interest, and costs.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Contract / Tortious Interference with Prospective Economic Advantage)

68. Plaintiff repeats and reiterates ¶¶ 1 through 51, as if set forth herein.

69. This claim is brought against both Defendants because, as alleged above, they are either working together or are the same person.

70. Mr. Gessel entered into a valid and enforceable contract with EEC to photograph the organization's December 10, 2023 event.

71. Defendants knew of the contract as EEC posted a list of sponsors for their event on the ticket website of the page.

72. Mr. Gessel's sponsorship and attendance, and thus contract, of the event was specifically referenced by Defendants when speaking to Sarah Roshan.

73. Defendants then disseminated defamatory statements to Ms. Roshan, which induced Ms. Roshan to breach EEC's contract with Mr. Gessel.

74. Defendants' interference was intentional and improper, as the statements they disseminated to Ms. Roshan were defamatory, false, and made with the intent of inducing EEC to breach its agreement with Mr. Gessel.

75. As a result of Defendants actions, Mr. Gessel lost his sponsorship, and the promised exposure his attendance at the event was to bring, along with reputational injury, mitigation expenses, and other injuries as a direct result of the breach of the contract.

76. As a result of the statements published to Ms. Roshan, Mr. Gessel is entitled to injunctive relief, compensatory damages, presumed damages, pre- and post-judgment interest, costs, and attorneys' fees, all in an amount to be proven at trial but no less than $1,000,000 exclusive of fees, interest, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Mr. Gessel demands judgment in his favor as follows:

a. An Order decreeing and declaring the statements to be false and defamatory.

b. Injunctive relief prohibiting Defendants from posting or distributing any same similar statements regarding Mr. Gessel or his reputation in any relevant community.

c. Compensatory damages, pre- and post- judgment interest, costs, and attorneys' fees, all in an amount as shall be proven at trial; and

d.  Such other and further relief as the Court deems just and fair.


Dated: January 29, 2024

Respectfully submitted,

David D. Lin
Lewis & Lin, LLC
77 Sands Street
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: david@ilawco.com
*Attorneys for Mr. Gessel*

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CLANE GESSEL

               *Plaintiff,*

     v.

JOHN DOES I & II, individuals whose
true names are unknown

               *Defendant.*

Civil Action No.  1:24-cv-000275

## VERFICATION

    I, Clane Gessel, affirm and state the following. The facts in the foregoing Verified Complaint are based on my personal knowledge, experiences, and beliefs; digital evidence obtained from third parties; and my attorneys' investigations. The facts are true and correct to the best of my knowledge and belief.

Dated: January 29, 2024

_____
Clane Gessel

15